## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## AT BOWLING GREEN

| | | |
|---|---|---|
| **RUSSELL BRANDS LLC,** | ) | |
| **UNION UNDERWEAR COMPANY, INC.** | ) | |
| **DBA FRUIT OF THE LOOM,** | ) | |
| | ) | |
| **Plaintiffs** | ) | **Civil Action No.** 1:12-CV-176-R |
| **v.** | ) | |
| | ) | **JURY DEMAND** |
| **GILDAN ACTIVEWEAR, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## VERIFIED COMPLAINT

For its cause of action against Gildan Activewear, Inc. ("Gildan"), Plaintiffs Russell Brands LLC and Union Underwear Company, Inc. d/b/a Fruit of the Loom (collectively, "Plaintiffs"), by and through their attorneys, respectfully state to the Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Russell Brands LLC ("Russell") is a limited liability company organized and existing under the laws of the State of Delaware. Russell's principal place of business is located in Warren County, Kentucky at One Fruit of the Loom Drive, Bowling Green, Kentucky 42103. Russell is wholly owned by Plaintiff Union Underwear Company, Inc. d/b/a Fruit of the Loom ("Fruit of the Loom").

2.      Plaintiff Fruit of the Loom is a corporation organized and existing under the laws of the State of Delaware. Fruit of the Loom's principal place of business is located in Warren County, Kentucky at One Fruit of the Loom Drive, Bowling Green, Kentucky, 42103.

3.      Defendant Gildan is a Canadian corporation and may be served with process at 600 de Maisonneuve West, 33rd floor, Montréal (Québec), H3A 3J2 Canada.

4.     This action arises under the trademark laws of the United States under the Lanham Act, 15 U.S.C. § 1051, *et. seq*. It also arises under state statutory and common laws.

5.     This Court has subject matter jurisdiction over Plaintiffs' claims for trademark infringement and related claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and 1338(a).

6.     Jurisdiction over the claims brought under state statutory and common law is conferred pursuant to 28 U.S.C. §§ 1338(b) and 1367(a). The Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of the Commonwealth of Kentucky pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiffs' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated in this judicial district.

## STATEMENT OF FACTS

8.     Plaintiffs are leading manufacturers and marketers of branded athletic and active wear or casual wear apparel.

9.     Plaintiffs market apparel for a wide variety of fitness activities and casual wear under widely-recognized brand names.

10.    The "Russell" name has been associated with high quality apparel since 1902. The JERZEES brand has been in use since at least as early as 1982 and has become a symbol for quality apparel in the minds of the consuming public.

11.    The "Fruit of the Loom" name has been associated with high quality textiles since 1856 and high quality apparel since 1891.

12.     Plaintiffs and their affiliates market their products in the United States and Canada as well as in over 70 other countries worldwide.

13.     Plaintiffs distribute their products through a variety of channels of trade, including small box discount retail outlets such as Dollar General stores.

14.     Russell owns the rights in and has duly registered the following marks with the United States Patent and Trademark Office on the Principal Register for use in connection with the following goods: JERZEES for use in connection with thermal underwear in International Class 25 (Reg. No. 4,031,440); JERZEES for use in connection with men's, women's and children's sweat shirts, sweat pants, T-shirts, shorts, jackets, placket shirts, and socks in International Class 25 (Reg. No. 1,683,032), (collectively, the "Marks"). The latter registration has achieved "incontestable" status. True and correct copies of the registration certificates and status page printouts from the United States Patent and Trademark Office internet website identifying the foregoing Marks are attached as **Exhibit 1** and incorporated into this Complaint by reference.

15.     The Marks bear the ® or ™ notice when used in connection with the apparel identified above.

16.     Apparel bearing the Marks has enjoyed widespread popularity among consumers.

17.     On or about July 1, 2008, Russell and Fruit of the Loom entered into a license agreement under which Russell granted Fruit of the Loom the right and license to use the Marks in connection with its products and with its business.

18.     Fruit of the Loom has previously supplied apparel products to Dollar General Corporation ("Dollar General"), and has more recently sold JERZEES branded casual apparel to Dollar General.

19.     In late 2011 or early 2012, Dollar General ceased purchasing JERZEES branded casual apparel from Plaintiffs. Dollar General subsequently entered into a new supply arrangement for substitute casual apparel products from Gildan.

20.     On information and belief, when Gildan was awarded the program to supply substitute casual apparel to Dollar General in 2012, there was still inventory of JERZEES branded apparel in the distribution centers that served Dollar General retail outlets. On information and belief, as part of its arrangement with Dollar General, Gildan was required to purchase the JERZEES branded apparel inventory that remained in the distribution centers serving Dollar General retail outlets and replace it with Gildan's own substitute casual apparel.

21.     Plaintiffs learned very recently that apparel manufactured by Plaintiffs bearing the Marks had been altered to include Gildan's own marks and was being offered for sale in several Dollar General retail outlets. Images of examples of such mislabeled apparel are attached as collective **Exhibit 2** to this Complaint.

22.     Additionally, Plaintiffs learned very recently that apparel manufactured by Plaintiffs that had originally contained labels bearing the Marks had been mutilated by having the labels partially ripped out of the apparel. A Gildan heat seal bearing Gildan's mark was then affixed to Plaintiffs' apparel and this apparel also was being offered for sale in certain Dollar General retail outlets. Images of examples of such relabeled apparel are attached as collective **Exhibit 3** to this Complaint.

23.     Plaintiffs immediately launched an investigation into the matter. During its investigation, Plaintiffs discovered such mislabeled and relabeled apparel available for purchase in Dollar General retail outlets in Bowling Green, Kentucky, in Alabama, in Florida, and in one or more states in the midwest and northeast region of the United States.

24.     Plaintiffs sent a letter to Gildan demanding that Gildan cease and desist the infringing and deceptive acts and account to Plaintiffs for the sales and distributions that had been made to date.

25.     Gildan responded over a week later by indicating that it was in the process of retrieving apparel from Dollar General distribution centers, but it also indicated that it was planning to allow some of the retail sales of the relabeled and mislabeled JERZEES apparel to the public to continue for at least a few more weeks.

26.     Continued sale of mislabeled and relabeled JERZEES apparel on the open market will cause irreparable harm to Plaintiffs. It could give consumers the false impression that Russell's JERZEES brand is owned by Gildan, that the JERZEES apparel originates with Gildan, and/or that Plaintiffs are somehow affiliated with, or sponsor or endorse Gildan or its products. Gildan's activities cause the apparel to fall below the standards associated with the JERZEES brand. Allowing the continued sale of the product permits Gildan to compete unfairly against Plaintiffs, gain percentage of market share, and boost its reputation to Plaintiffs' detriment through deceptive measures of unfair competition and reverse passing off.

## CAUSES OF ACTION

### COUNT I

### FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER THE LANHAM ACT

27.     The allegations contained in the foregoing paragraphs are repeated and incorporated herein by reference.

28.     Russell owns the Marks and the federal registrations for them. The Marks are inherently distinctive and strong.

29.     JERZEES apparel that Gildan relabeled and mislabeled was distributed, offered for sale, and sold through retail outlets in interstate commerce.

30.     Gildan's activities constitute unfair competition and infringement of and contribute to the infringement by others of Plaintiffs' exclusive right to use the Marks, in violation of the Lanham Act.

31.     Gildan's unauthorized mislabeling and relabeling of the JERZEES apparel and the unauthorized use, offering, distribution, and sale of such products is likely to cause confusion, mistake, or deception as to the source, origin, or authenticity of the apparel and as to the association, sponsorship, or endorsement of Gildan by Plaintiffs.

32.     Gildan's mislabeling and relabeling of JERZEES apparel constitutes reverse passing off because Gildan is in fact representing Plaintiffs' products as Gildan's own.

33.     Gildan's mislabeling and relabeling of JERZEES apparel and the unauthorized use, offering, distribution, and sale of such products contributes to others' infringement of Plaintiffs' rights.

34.     Gildan's activities are likely to cause confusion and mislead the public to conclude, incorrectly, that the mislabeled and relabeled products originate with Gildan, are authorized by Plaintiffs, or that there is an association or affiliation between Gildan and Plaintiffs, all to the damage and harm of Plaintiffs and the public. Gildan's actions impair the goodwill associated with Plaintiffs' business under the JERZEES Marks.

35.     Upon information and belief, Gildan has used, offered, marketed, sold, and distributed the mislabeled and relabeled JERZEES apparel with the willful intent and purpose of misleading, deceiving, or confusing consumers as to the origin and authenticity of the apparel and of trading on Plaintiffs' goodwill and business reputations. Gildan has diverted the goodwill

associated with the JERZEES Marks for its benefit and thus profited unfairly and been unjustly enriched.

36.     At a minimum, Gildan acted with willful blindness to and in reckless disregard of Russell's registered Marks and Fruit of the Loom's license to use them.

37.     As a result of its wrongful misconduct, Gildan is liable to Plaintiffs for trademark infringement and unfair competition under the Lanham Act.

38.     Plaintiffs have suffered and will continue to suffer, damages and substantial injury as a result of Gildan's actions.

39.     Plaintiffs are entitled to recover monetary compensation including but not limited to any and all profits Gildan has made as a result of its wrongful conduct, damages sustained by Plaintiffs, damages that the court may in its discretion award, including a percentage of Gildan's gross sales, trebling of the foregoing, and/or costs of the action, including attorneys' fees pursuant to 15 U.S.C. § 1117.

40.     Plaintiffs have been irreparably injured and are entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a). Plaintiffs have no adequate remedy at law for Gildan's wrongful conduct because, among other things, (a) the Marks are unique and valuable property that have no readily determinable market value, (b) Gildan's infringement constitutes harm to Plaintiffs such that Plaintiffs could not be made whole by any monetary award, (c) if Gildan's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the mislabeled and relabeled JERZEES apparel, (d) if Gildan's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the sponsorship, endorsement, or affiliation between Plaintiffs and Gildan, and (e) Gildan's wrongful conduct, and the resulting damage to

Plaintiffs are continuing. Plaintiffs will continue to suffer irreparable injury unless Gildan is preliminarily and permanently enjoined.

## COUNT II

### UNFAIR COMPETITION, TRADEMARK INFRINGEMENT, AND MISAPPROPRIATION UNDER KENTUCKY LAW

41.     The allegations contained in the foregoing paragraphs are repeated and incorporated herein by reference.

42.     Gildan's actions have injured Plaintiffs by misappropriating their business and/or impairing the goodwill associated with Plaintiffs' business conducted under the JERZEES Marks.

43.     Gildan has unfairly profited by using the JERZEES Marks to promote goods bearing Gildan's marks by including the JERZEES Marks on products without Plaintiffs' authorization and by diverting for its own purpose the goodwill associated with Plaintiffs and Plaintiffs' JERZEES Marks.

44.     Gildan has acted intentionally in attempting to cause confusion, mistake, or to deceive consumers through the actions described herein.

45.     Gildan has been unjustly enriched and Plaintiffs have suffered damages from Gildan's violations of Kentucky's statutory and common laws.

46.     Plaintiffs have been irreparably injured and have suffered monetary damages as a result of Gildan's violations of Kentucky's statutory and common laws and Plaintiffs will continue to suffer irreparable injury unless Gildan is permanently enjoined, for which there is no adequate remedy at law.

47.     These and other intentional acts by Gildan complained of herein constitute infringement, unfair competition, and misappropriation in violation of Kentucky unfair competition law.

## COUNT III

### FOR FALSE ADVERTISING UNDER THE LANHAM ACT

48.     The allegations contained in the foregoing paragraphs are repeated and incorporated herein by reference.

49.     Gildan's relabeling and mislabeling of JERZEES branded apparel communicates a false statement of fact about the origin of the apparel, namely, that Gildan is the source of JERZEES branded apparel.

50.     The relabeling and mislabeling of JERZEES branded apparel deceives and has the tendency to deceive a substantial number of consumers.

51.     The deception is material and likely to affect the purchasing decisions of consumers.

52.     The false statement involves mislabeled and relabeled JERZEES apparel offered for sale, sold, and distributed in interstate commerce.

53.     The deception has resulted in and is likely to result in substantial harm to Plaintiffs, including both damages and irreparable harm for which there is no adequate remedy at law.

## COUNT IV

### FOR A TEMPORARY RESTRAINING ORDER
### AND FURTHER INJUNCTIVE RELIEF

54.     The allegations contained in the foregoing paragraphs are repeated and incorporated herein by reference.

55.     Plaintiffs' rights are being and will be violated by Gildan. Unless Gildan is restrained from selling the mislabeled and relabeled apparel, required to retrieve the mislabeled and relabeled apparel it has already distributed, and restrained from further mutilation or manipulation of the apparel, Plaintiffs will suffer immediate and irreparable harm.

56.     In accordance with Fed. R. Civ. P. 65, Plaintiffs are entitled to a temporary restraining order, restraining Gildan and its related companies, or any persons acting in concert with it, from damaging, concealing, or removing the mislabeled or relabeled apparel once retrieved from Dollar General retail outlets or other locations.

57.     Dollar General has asked Gildan to retrieve the mislabeled and relabeled apparel that was shipped to Dollar General and its retail outlets. Plaintiffs wrote Gildan on September 28, 2012, and asked Gildan to, among other things, retrieve mislabeled and relabeled JERZEES apparel, prevent the further distribution and sale of mislabeled and relabeled JERZEES apparel, and account to Plaintiffs for mislabeled and relabeled JERZEES apparel. Plaintiffs afforded Gildan over a week to act and gather the information. See **Exhibit 4** (letters between Plaintiffs and Gildan)

58.     Gildan has responded to Plaintiffs' demands unsatisfactorily at the end of the day on October 10, 2012. See **Exhibit 4**. Gildan's response came at the last possible moment of the time provided even though it acknowledges it knew about the infringing products prior to receipt of Plaintiffs' letter. Gildan's response gives the impression that it has intentionally chosen to allow apparel to stay on the retail store shelves for weeks, and that it prioritized retrieval of infringing product from store shelves behind retrieval of infringing product from distribution centers. Gildan has failed to provide an accounting to Plaintiffs and, as of the date of this

complaint, has not provided even the information Gildan said it would have in hand by October 10, 2012. Gildan has provided only the vaguest indication that it plans to complete retrieval of infringing product from all Dollar General store shelves in early November. This delay allows Gildan to prolong the sales of infringing, mislabeled and relabeled JERZEES apparel to the public, thereby prolonging the harm to Plaintiffs and increasing the unjust benefit to Gildan.

59.    Plaintiffs have a realistic concern and fear that Gildan will allow sales and distribution of the relabeled and mislabeled JERZEES apparel to continue before a permanent injunction can be entered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1.    That the Court enter an order that temporarily enjoins and restrains Gildan, along with its affiliates and subsidiaries and all of their principals, partners, agents, officers, servants, employees, representatives, successors, and assigns, and all those persons or entities acting in concert or participation with them, from:

(a)    relabeling or mislabeling any apparel that originally bore any of the Marks;

(b)    further mutilating or modifying any of the apparel that Gildan has relabeled or mislabeled;

(c)    selling, distributing, offering for sale, or otherwise using any of the relabeled or mislabeled apparel;

(d)    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to above;

11

and orders Gildan to:

(e)     retrieve all the relabeled and mislabeled apparel that originally bore any of the Marks from the Dollar General or other stores and distribution centers in which such apparel is now for sale or being stored for sale and deliver it along with any JERZEES apparel in Gildan's possession or control to Plaintiffs for review, inspection, and, at Plaintiffs' discretion, destruction;

(f)     prevent any further sales or distribution of relabeled or mislabeled JERZEES apparel to Dollar General or other distribution centers or warehouses, to Dollar General or other retail outlets, to consumers (whether from Dollar General or other retail outlets), and to any other link in the supply chain between Gildan and the consumer;

2.     That the Court schedule a hearing to consider Plaintiffs' accompanying motion for injunctive relief, and, following a hearing, that the Court issue an order against Gildan, along with its affiliates and subsidiaries and all of their principals, partners, officers, directors, agents, servants, employees, representatives, successors and assigns, and all persons and entities acting in concert or participation with them that preliminarily and permanently enjoins and restrains them from:

(a)     relabeling or mislabeling any apparel that originally bore any of the Marks;

(b)     further mutilating or modifying any of the apparel that Gildan had relabeled or mislabeled;

(c)     selling, distributing, offering for sale, or otherwise using any of the relabeled or mislabeled apparel;

(d)     assisting, aiding, or abetting any other person or business entity in engaging in or performing in any of the activities referred to above;

(e)     making any infringing use or infringing distribution of apparel and/or other items bearing any of the Marks or any other mark owned by Plaintiffs;

(f)     manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any apparel bearing any of the Marks or any of Plaintiffs' marks;

(g)     using any of Plaintiffs' marks, including without limitation, the Marks in connection with the distribution, offering for distribution, circulation, sale, offering for sale, import, advertisement, promotion, or display of any apparel, or any manufacture, assembly, production, distribution, offering for distribution, circulation, sale, offering for sale, import, advertisement, promotion, or display of any apparel, component, or item incorporating the Mark not authorized or licensed by Plaintiffs;

(h)     using any false designation of origin or false description which can or is likely to lead consumers to believe erroneously that any apparel originally manufactured by Plaintiffs or bearing Plaintiffs' marks was actually manufactured, assembled, produced, distributed, offered for distribution, circulation, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by Gildan when such is not true in fact;

(i)     engaging in any other activity constituting an infringement of any of the Marks or of any of Plaintiffs' rights in or right to use or to exploit such marks; and

(j)     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to above;

and orders Gildan to:

> (k)     retrieve all the relabeled and mislabeled apparel that originally bore any of the Marks from the Dollar General or other stores and distribution centers in which such apparel is now for sale or being stored for sale and deliver it along with any JERZEES apparel in Gildan's possession or control to Plaintiffs for review, inspection, and, at Plaintiffs' discretion, destruction;

> (l)     prevent any further sales or distribution of relabeled or mislabeled JERZEES apparel to Dollar General or other distribution centers or warehouses, to Dollar General or other retail outlets, to consumers (whether from Dollar General or other retail outlets), and to any other link in the supply chain between Gildan and the consumer;

3.     That the Court enter an order declaring that Gildan hold in trust, as constructive trustee for the benefit of Plaintiffs, the proceeds from the distribution of the mislabeled and relabeled apparel, including any illegal profits obtained from its distribution of infringing copies of apparel originally branded with the Marks and requiring Gildan to provide Plaintiffs with a full and complete accounting of all amounts received by Gildan and all amounts due and owing to Plaintiffs as a result of Gildan's activities.

4.     That the Court order Gildan to pay Plaintiffs' monetary relief, including without limitation general, special, and actual damages, including without limitation those in the form of (a) Plaintiffs' actual damages,  (b) Gildan's profits, and (c) any damages that the Court may, in its discretion, award, including without limitation a percentage of Gildan's gross sales, all with prejudgment interest thereon;

5.     That the Court award Plaintiffs' trebling of the foregoing award;

6.     That the Court award Plaintiffs costs of the action, find this to be an exceptional case, and award Plaintiffs' reasonable attorneys' fees;

7.     That the Court award Plaintiffs punitive or exemplary damages in an amount deemed appropriate by the finder of fact;

8.     That the Court award any further relief as may be just and proper to which Plaintiffs may be entitled.

**PLAINTIFFS RESPECTFULLY DEMAND A JURY TO TRY THIS CASE.**

**STITES & HARBISON, PLLC**

s/ Amy Sullivan Cahill
Amy Sullivan Cahill
Kentucky Bar No. 085554
400 West Market Street, Suite 1800
Louisville, KY  40202-3352
Telephone: (502) 587-3400
Facsimile:  (502) 587-6391

*Attorneys for Plaintiffs*

## **Verification**

Don Adamic, Executive Vice President of Retail Sales of Union Underwear Company, Inc. d/b/a Fruit of the Loom, being duly sworn, states under oath and under penalty of perjury under the laws of the United States that he has read the foregoing pleading, and that all of the factual allegations contained in the foregoing pleading are true and correct to the best of his knowledge, information, and belief.

_____
Don Adamic

COMMONWEALTH OF KENTUCKY  )
                                                          )
COUNTY OF WARREN                      )

Sworn to and subscribed before me, this

the 12th day of October, 2012.

_____
Notary Public

My Commission Expires:  03 - 02 - 12

16